Rockingham
No. 2005-680

LAUREN BELANGER

v.

MMG INSURANCE COMPANY

Argued: March 16, 2006
Opinion Issued: May 26, 2006

*McDowell & Osburn, P.A.*, of Manchester (*David S.V. Shirley* and *Jeffrey B. Osburn* on the brief, and *Mr. Shirley* orally), for the plaintiff.

*Mulvey Professional Association,* of Portsmouth (*Lesley F. Cornell* on the brief and orally), for the defendant.

GALWAY, J. The plaintiff, Lauren Belanger, appeals an order of the Superior Court (*McHugh,* J.) determining that she was not a "resident" of her mother's household when she was involved in an automobile accident. We reverse and remand.

The record reflects the following facts. In 2002, Belanger and two friends entered into a one-year lease for an apartment in Brighton, Massachusetts. In September, when the lease began, Belanger moved out of her mother's home in Hampton, New Hampshire, and into the Brighton apartment. She was twenty-two years old at that time. Her reason for moving was that she thought she would have a better chance of finding work as a massage therapist in the Boston area than in New Hampshire. She took a job at a retail store in Boston. While living in Brighton, she continued to receive some mail at her mother's house and kept some clothing and personal items there. During the ensuing year, conflicts arose between Belanger and her roommates. She spent some nights at her mother's house in April and May of 2003. By the end of May, her roommates told her to move out. In early June, Belanger packed most of her clothes and took them to her mother's home, but left some furniture at her apartment. Though her lease for the Brighton apartment ran through August, she spent the majority of nights at her mother's home. She also spent a few nights a week in June at her boyfriend's home. Belanger continued to work at her retail job in Boston after leaving her apartment.

While staying at her mother's house in June, Belanger began looking for a new apartment to rent with her sister. The sisters located a suitable apartment in Somerville, Massachusetts. On June 25, 2003, they paid the first month's rent and security deposit for the apartment, and received keys to the apartment. Though the lease began on July 1, the landlord told Belanger that she could move in as soon as possible. On the next day, June 26, the sisters were driving to Somerville to clean the apartment when they were involved in an automobile accident and Belanger was injured.

Belanger sought uninsured motorist insurance coverage from the defendant, MMG Insurance Company (MMG), with which Belanger's mother had a policy. The policy provided coverage to Belanger's mother along with any "family member." The policy defined "family member" as: "a person related to [the policy holder] by blood, marriage or adoption who is a resident of [the policy holder's] household." MMG denied coverage.

Belanger brought a declaratory judgment action against MMG, alleging that she was a "family member" under her mother's policy. MMG moved for summary judgment, arguing that Belanger was not a "resident" of her

mother's household at the time of the accident. The trial court granted the motion for summary judgment. In its order, the trial court defined "resident" as

> any person who occupies a dwelling within the State, has a present intent to remain within the State for a period of time, and manifests the genuineness of that intent by establishing an ongoing physical presence within the State together with indicia that this presence within the State is something other than merely transitory in nature.

Applying this definition, the trial court found that, because Belanger rented the Somerville apartment, it was not her intent to reside with her mother for the foreseeable future, and, thus, Belanger was not a resident of her mother's household.

On appeal, the parties agree that the sole issue is whether Belanger was a "resident" of her mother's household, under the policy, at the time of the accident. Belanger argues that the trial court applied an incorrect legal standard in determining whether or not she was a resident of her mother's household. MMG responds that, based upon the facts of this case, the trial court properly found that Belanger's residence was not with her mother. Despite agreeing with the trial court's result, MMG urges us to adopt a definition of residence that differs from the definition used by the trial court. MMG would have us apply the definition of "residence" established by RSA 21:6-a (2000), which defines residence as

> a person's place of abode or domicile. The place of abode or domicile is that designated by a person as his principal place of physical presence for the indefinite future to the exclusion of all others. Such residence or residency shall not be interrupted or lost by a temporary absence from it, if there is an intent to return to such residence or residency as the principal place of physical presence.

Our standard of review for a trial court's ruling on summary judgment is as follows:

> In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. We review the trial court's application of the law to the facts *de novo*.

*Banfield v. Allstate Ins. Co.*, 152 N.H. 491, 493 (2005).

■ We begin our analysis by clarifying the term "resident," which MMG's policy did not define. "The interpretation of insurance policy language is a question of law for this court to decide." *Krigsman v. Progressive N. Ins. Co.*, 151 N.H. 643, 645 (2005). We have considered the meaning of the term "resident" in the insurance context on multiple occasions. *E.g., Concord Group Ins. Co's v. Sleeper*, 135 N.H. 67, 70 (1991). In such decisions, we have defined "residence" as follows: "The term 'residence' in [the insurance] context, refers to the place where an individual physically dwells, while regarding it as his principal place of abode." *Id.* Accordingly, the trial court applied an incorrect definition of "resident" to the facts. The trial court's definition and decision improperly considered "intent to remain" at a location. Intent to remain is not a factor in our definition of "residence." Our definition of "residence" considers two factors that must occur simultaneously: (1) the person must physically dwell at the claimed residence; and (2) the person must regard the claimed residence as his principal place of abode.

■ We also decline to adopt MMG's definition of "residence" taken from RSA 21:6-a. Though the legislature has established MMG's definition, that definition does not apply in the context of interpreting language in insurance contracts. RSA 21:1 (2000), entitled "Application," states that the rules established in RSA chapter 21 apply to the construction of statutes. Because the instant case involves interpretation of contractual, rather than statutory, language, the definition of "residence" that MMG promotes does not apply to the instant case.

Having clarified the definition of "residence" in this case, we must now apply that definition to determine whether Belanger was a resident of her mother's household. A determination of residency is largely based upon the facts of each case. *See Limonges v. Horace Mann Insurance Co.*, 134 N.H. 474, 475 (1991) (emphasizing that the facts determine whether individuals are members of the same household); *Sleeper*, 135 N.H. at 70 (stating that a determination of residency involves weighing a number of factors). There is no dispute between the parties as to the first factor of our definition of residence: physically dwelling at the claimed residence. There can be little doubt that Belanger physically dwelled with her mother during the month of June. Though Belanger spent a few nights in June with her boyfriend, the trial court found that she spent the majority of nights that month at her mother's house. It is clear that, at the time of the accident, Belanger physically dwelled with her mother.

The remaining question for us to decide is whether, on June 28, the day of the accident, Belanger regarded her mother's home as her principal

place of abode. The facts indicate that Belanger made a conscious decision no longer to live in her Brighton apartment. During April and May, she intermittently stayed at her mother's home. In late May, her roommates in Brighton told her to move out, and, even though Belanger's lease ran through August, the record reflects that she complied with their directive. At the beginning of June, she took all of the clothes that she was likely to wear in the near future and brought them to her mother's house. She then spent the majority of nights in June sleeping at her mother's house. Further, Belanger spent much of June looking for a new apartment, and, by the date of the accident, had paid the first month's rent and security deposit for a new apartment in Somerville. These facts show that Belanger no longer intended to dwell at her Brighton apartment and thus, on the date of the accident, intended her mother's home to be her principal place of abode.

Based upon the above facts, we conclude that Belanger was a resident of her mother's household under MMG's policy at the time of the accident. Accordingly, in consideration of all inferences properly drawn from the undisputed facts in a light most favorable to Belanger, we additionally conclude that MMG was not entitled to summary judgment as a matter of law.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.